## THE STATE vs. MARTIN.

Where a defendant is indicted under the 9th section of the gaming act, for betting a sum of money on a game of hazard, played with dice, he cannot be convicted if the proof shows that the game at which he bet—being a lottery, where the exhibitor receives money from the player as the price of whatever he may lose upon the chances of a throw of dice—falls within the denomination of the banking games prohibited by the first section of the act.

*Appeal from Dallas Circuit Court.*

Hon. JOHN C. MURRAY, Circuit Judge.

HOLLOWELL, Attorney General, for the State.

Hon. THOMAS JOHNSON, Special Judge, delivered the opinion of the court.

The indictment in this case contains three separate counts, but they are all substantially the same. The essence of the charge is, that the defendant, on the 10th of December, 1856, at

the county of Dallas, in the State of Arkansas, bet the sum of fifty cents on a game of hazard, played with dice, and commonly called lottery.

The indictment is believed to be in accordance with the statute, and the only question to be determined is, whether the case as developed by the proof, comes up to any one of the offences contemplated by it. The 9th section of the act provides that " if any person shall be guilty of betting any money, or other valuable thing on any game of hazard or skill, he shall be fined, etc. And the next further declares that, in prosecuting under it, it shall be sufficient for the indictment to charge that the defendant bet money or other valuable thing, on a game of hazard or skill, without stating with whom the game was played.

James B. Thrasher, the first witness introduced, testified that within twelve months before the finding of the indictment, there came to the place a stranger, who was traveling with a circus, that the stranger had an oil cloth which was checked off into small squares and that upon each of the squares there were different numbers in figures, that the oil cloth was placed on a table. He also had a small box and six dice which were thrown from the box by the player, that every man who played had to pay him fifty cents for each throw of the dice from the box, that if the player threw the number corresponding with the one on either of the prize checks on the cloth, he won the prize of that check, that the prizes ranged from one to two hundred dollars, that there were several checks on the cloth with numbers that were not prize numbers, and that when the player threw one of these numbers he did not win any thing. That the stranger or owner of the cloth did not throw the dice, that he got the half dollar which the player gave, for the privilege of throwing the dice absolutely, and without any regard to the result of the throw, and the privilege of throwing the dice was given by the owner to all who desired, upon their paying the half dollar, and that the owner called the game a lottery. He further stated that he had seen William H. Martin (the defendant) bet at said game in the county, and State, and within the time aforesaid.

William Hamilton testified that the other witness (James B. Thrasher) had correctly described the game, and that the stranger called it a lottery, but that he had not seen the defendant bet on said game. Neither of the witnesses had ever seen the oil cloth off the table.

Robert Martin, a witness introduced by the State, then stated that he was a member of the grand jury that found the indictment in this case, that the grand jury tried to ascertain the name of the game, but could not, that he had heard the stranger call the game lottery, but that they did not know that it was its true name. That he had seen a game like this in every particular on a steam boat, but that the prizes were not all in money, and that it was called a lottery.

This is the substance of all the testimony submitted in the case. Upon this testimony the State asked the court to instruct the jury, first, that if they believed from the evidence that the defendant bet money upon a game of hazard played with dice, commonly called lottery, in the county of Dallas and State of Arkansas and within twelve months before the indictment was preferred against him, they must find him guilty : 2d. If they believed from the evidence that the game was a banking game they must find him guilty, provided he bet upon it in manner and form as charged in the indictment, and 3d. That a banking game in the meaning of the law, is one upon which the owner or exhibitor of the game bet against all persons who come.

The court gave the second and third but refused the first.

The defendant then asked the following which was given by the court. If the jury believe from the evidence that the betting of the defendant was on a gaming or gambling device adopted, devised, or designed for the purpose of playing any game of chance, at which any money or property might be won or lost, and upon which the setter up or owner of the device bets against all who wish to bet with him they would find defendant not guilty.

The State, who prosecutes the appeal, complains of the court below for refusing the first instruction, and also for giving the

one asked by the defendant. It is clear that there is no error in giving the instruction asked by the defendant. The indictment was not framed in such a way as to embrace any one of the offences contemplated by the first section of the act. The court has repeatedly held that the first section relates exclusively to the banking games, so called, whether played with cards, or by means of any other contrivance, whether called by the names specified, or by any new name or device, and the distinguishing feature of which is, that they are set up or exhibited to be bet against by all comers. See *State vs. Hawkins* 15 *Ark.*, 259. The indictment in this case could not have been preferred under the eighth section of the statute against gaming, for this applies only to games played with cards. It is obviously founded upon the ninth section, which is not a repeal, but simply a cumulation of the first, and consequently, if the evidence proved a betting on any one of the banking games, the defendant not having been indicted for such offense could not be legally convicted. The point then to be determined relates to the correctness of the refusal to give the first instruction moved by the attorney for the State.

The ninth section, upon which this indictment was framed, was not intended to re-enact any one of the offenses contemplated by the eight preceding sections, but on the contrary, was designed to commence where they stopped, and to embrace every other game of hazard or skill. The distinction recognized in the case of the State against Hawkins and already referred to, was first laid down in *Drew vs. The State* 5 *Eng.* 84, and has been uniformly adhered to ever since by this court. In the case of *Drew vs. The State*, this court, by Scott J. said : " The gist of the offence created by that section, which we are now considering, is the betting of money, or other thing of value, or the representation of any thing that may be esteemed of value, at or upon that Ishmaelitish class of gambling devices and games of chance, described and indicated in the first section of the act, which are to be distinguished from that other class of small games described and indicated in the eighth sec-

tion, not only by the general feature of supposed predominance of chance over skill, but also in the further general feature of being bank games, or devices, against which banks or devices many play for and against the money exhibited or understood to be in the bank to be bet against and paid out by the conductor of the game or device to those who may win on the chances. The offence of betting that is, by this section, designed to be proscribed, has no necessary or usual connection with mutuality of betting as between individuals, but simply consists in the wilful act of betting or venturing of money or other thing of value, or that which represents a thing that is esteemed of value, at, upon, or against any of these banks, games or gambling devices of chance, at which money or property may be won or lost, whether they be named or unnamed, propelled by any agency visible or invisible, known or unknown, by which this money is paid or received according to the exigency of these supposed chances.

That the device exhibited in the present instance was adapted, devised and designed for the purpose of playing a game of chance, we think there cannot exist a doubt. This is manifest from the arrangement of the cloth, as some of the checks upon it contained no prizes, and as a matter of course, if the throw of the dice for which the party paid his half dollar corresponded with the numbers inscribed upon them, they lost their money and won nothing. It is equally certain that it falls within the denomination of a banking game. When the table was placed upon the floor, and the cloth with its checks and prizes stretched upon it, and the exhibitor seated behind it with his box and dice in his hand, the game was complete and ready for action, and hus exhibited to be bet against by all persons who should see fit to make a trial of their fortunes.

The exhibitor does not receive the money from the player as a compensation for the use of the device, as in Rondo, Billiards Ten Pins, Fives Court, and the like ; but on the contrary, he takes it absolutely as the price of whatever he may lose upon the chances of the throw of the dice. There is no error there-

fore in the refusal of the first instruction asked by the State. The proof was not competent under the indictment, which was predicated on the ninth section; but on the contrary, would only have been admissible in a prosecution upon the first, and upon an indictment properly framed upon that section. This being the case the instruction, if given, would have been merely abstract, and consequently not entitled to any consideration whatever.

Let the judgment be in all things affirmed.

Mr. Justice COMPTON did not sit in this case.